1

2

3

4

5                    UNITED STATES DISTRICT COURT

6              FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8    LACEY TIMMINS,                          No. 2:24-cv-03017-DJC-JDP

9              Plaintiff,

10        v.                                 ORDER DENYING DEFENDANT'S
                                             MOTION TO DISMISS
11   UNILEVER UNITED STATES, INC., a
     Delaware corporation,
12
             Defendant.
13

14        Plaintiff purchased baby petroleum jelly advertised as hypoallergenic.  She later

15   learned the jelly contained fragrance, which she alleges is a known allergen.  Plaintiff

16   brought state law claims against Defendant for false advertisement,

17   misrepresentation, and violation of warranty.  Defendant moves to dismiss all claims,

18   arguing that Plaintiff's allegations are insufficient.  Principally, Defendant argues that

19   the term hypoallergenic on the front label was sufficiently vague such that Plaintiff

20   should have looked to the back label for additional information.  The Court disagrees

21   and DENIES Defendant's Motion to Dismiss (ECF No. 8).

22                              **BACKGROUND**

23        In 2023, Lacey Timmins ("Plaintiff") purchased Unilever United States Inc.'s

24   ("Defendant") Vaseline brand Baby Healing Jelly ("the Product") to alleviate her son's

25   eczema and diaper rash.  (Compl. ¶¶ 3, 7, ECF No. 1.)  Before purchasing the Product,

26   she saw that the front label represented the Product as "hypoallergenic."  (*Id.* ¶ 8.)

27   Plaintiff alleges that a reasonable consumer understands the term "hypoallergenic" to

28   mean "a product [that] is specifically formulated to minimize the risk of allergic

                                       1

1    reactions and is free from common allergens."  (*Id.* ¶ 5.)  Plaintiff alleges that the

2    Product's back label lists "fragrance" as an "inactive ingredient."  (*Id.* ¶ 23.)  Because

3    Plaintiff alleges that "fragrance" is a common allergen, she maintains that Defendant's

4    representation of "hypoallergenic" was false and misleading.  (*Id.* ¶¶ 24–25.)

5         Plaintiff filed her complaint ("the Complaint"), bringing seven claims on behalf

6    of a putative class: (1) violations of California's Unfair Competition Law ("UCL"); (2)

7    violations of California's False Advertising Law ("FAL"); (3) violations of California's

8    Consumer Legal Remedies Act ("CLRA"); (4) breach of implied warranty; (5) breach of

9    express warranty; (6) unjust enrichment; and (7) fraud by omission/ intentional

10   misrepresentation.  (*Id.* ¶¶ 74–145.)  Defendant now moves to dismiss all claims for the

11   reasons analyzed below.[1]  (Mot., ECF No. 8.)  The matter is fully briefed and was

12   submitted without oral argument pursuant to Local Rule 230(g).  (ECF No. 15.)

## LEGAL STANDARD

14        A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to

15   state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a

16   motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter,

17   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.

18   Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  Plausibility

19   requires "factual content that allows the court to draw the reasonable inference that

20   the defendant is liable for the misconduct alleged."  *Id.*  While "detailed factual

21   allegations" are unnecessary, the complaint must allege more than "[t]hreadbare

22   recitals of the elements of a cause of action, supported by mere conclusory

23   statements."  *Id.*  Conclusory allegations are not to be considered in the plausibility

24   analysis.  *Id.* at 679.

---

[1] Defendant requests the Court take judicial notice of the complaint that Plaintiff filed in the related case, *Lacey Timmins v. Walmart, Inc.*, 2:24-cv-02960-DJC-JDP (E.D. Cal.).  (Request for Judicial Notice, ECF No. 9.)  A court may take notice of another court proceeding if it has "a direct relation to matters at issue."  *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (citation omitted).  Because the other court proceeding has a direct relation, and because the request is unopposed, the Court grants Defendant's request.

2

1

**DISCUSSION**

2

**I.      Rule 9(b)**

3          Defendant contends that Plaintiff fails to satisfy Federal Rule of Civil Procedure

4    9(b).  (Mot. at 9–10.)  Allegations based in fraud "must be accompanied by 'the who,

5    what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.*,

6    567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  "To comply with Rule 9(b),

7    allegations of fraud must be specific enough to give defendants notice of the

8    particular misconduct which is alleged to constitute the fraud charged so that they

9    can defend against the charge and not just deny that they have done anything

10   wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up).

11         Plaintiff sufficiently alleges the "who, what, when, where, and how" of the

12   misconduct charged.  *See Kearns*, 567 F.3d at 1124 (citation omitted).  The "who" is

13   Defendant.  (Compl. ¶ 3.)  The "what" is the Product, specifically the front label's

14   representation that it is "hypoallergenic."  (*Id.* ¶¶ 3–4.)  The "where" is Defendant's

15   stores where the Product is sold.  (*Id.* ¶ 64.)  The "when" is sometime in 2023 or, as

16   Plaintiff defines the class, every transaction since November 1, 2020.  (*Id.* ¶¶ 7, 64.)

17   The "how" is that the Product contains fragrance, which is a common allergen, and

18   therefore the Product is allegedly not "hypoallergenic" as advertised.  (*Id.* ¶ 4.)

19         Defendant argues that Plaintiff has not sufficiently pled the "when," "what," or

20   "how" of the alleged fraud.  (Mot. at 9–10.)  Regarding the "when," Defendant

21   contends Plaintiff's allegation of purchasing the Product "in 2023" is not specific

22   enough.  (*Id*. at 10 (citing Compl. ¶ 7).)  To support its argument, Defendant relies on

23   *Buckley v. BMW North America*, where the district court held that plaintiff's allegation

24   of "the middle of September" was not precise enough because their allegations

25   concerned representations made by the defendant's sales agents.  *Buckley v. BMW N.*

26   *Am.*, No. CV 19-1255-MWF-SS, 2020 WL 3802905, at *2 (C.D. Cal. Mar. 9, 2020).  The

27   *Buckley* court held that, to prepare an adequate answer, the defendant needed more

28   information to determine the identity of the sale agents and therefore be on notice of

1   the misconduct alleged. *Id.* at *11. However, *Buckley* is distinct from the present

2   action because, while the defendant there needed more precise information to

3   identify the transaction where the alleged fraud occurred, Defendant here has not

4   shown that it needs further details of the charged misconduct. Defendant fails to

5   explain how it is unable to answer the Complaint without more specificity as to when

6   Plaintiff purchased the Product in 2023. As Plaintiff alleges, and the Court accepts as

7   true for purposes of this motion, the Product's packaging has been consistent for the

8   last four years, which means the label has stayed the same since November 1, 2020.

9   (Compl. ¶ 33.)

10          Regarding the "what" and "how" of the fraud, Defendant argues Plaintiff must

11   allege what she believed "hypoallergenic" to mean and how she came to learn that

12   the Product was not free of common allergens. (Mot. at 10.) Defendant fails to

13   explain why Plaintiff's knowledge of the term "hypoallergenic" is necessary to put it

14   on notice of the alleged fraud. Likewise, Defendant fails to explain why it needs to

15   know when Plaintiff learned that the Product was not free of common allergens.

16   Defendant is on notice of the charged misconduct without such allegations.

17          Defendant's final Rule 9(b) argument concerns the "what" of the fraud. Plaintiff

18   pleaded that Defendant has a "widespread, deceptive use of the term

19   'hypoallergenic' in its misleading labels and marketing materials, such as in Unilever's

20   Vaseline brand Baby Healing Jelly (the 'Product')." (Comp. ¶ 3.) Plaintiff included a

21   footnote at the end of this allegation stating the term "Product" includes six other

22   products "bearing the same packaging and labeling, but often referred to by various

23   third party retailers by different names."[2] (*Id*. ¶ 3 n.1). Defendant argues – in a single

24   sentence – that because Plaintiff defines several products as "the Product," the

25   Complaint does not make clear which product Plaintiff purchased. (Mot. at 10.)

26   However, Plaintiff alleges that each product has the same alleged deception: it

27

28   [2] Plaintiff alleges that Defendant manufactures these products and sells them through its "in-house brand" Vaseline. (Compl. ¶ 11.)

4

1  advertises the product as "hypoallergenic" despite listing "fragrance" as an active

2  ingredient.  (Compl. ¶ 3 n.1.)  Defendant is therefore on notice of the alleged fraud.

3  Moreover, Plaintiff included pictures in the Complaint of the label and packaging of

4  Vaseline brand Baby Healing Jelly.  (Compl. at 5–7.)  By attaching photos of the

5  allegedly deceptive label, Plaintiff "sufficiently alleges the particular label she herself

6  saw."  *See Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 786 (9th Cir. 2024).

7          Accordingly, Plaintiff's allegations comply with Rule 9(b) because they give

8  Defendant "notice of the particular misconduct which is alleged to constitute the

9  fraud charged" so that it can defend against the charge.  *See Swartz*, 476 F.3d at 764.

10  **II.      The UCL, FAL, and CLRA Claims**

11          "[C]laims under the UCL, FAL, and CLRA are governed by the 'reasonable

12  consumer' standard," which requires a plaintiff to "show that members of the public

13  are likely to be deceived."  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097

14  (9th Cir. 2023) (internal quotations and citations omitted).  Courts begin this analysis

15  by focusing on the front label, and they may consider the back label of a product only

16  if the front label creates ambiguity such that "reasonable consumers would

17  necessarily require more information before they could reasonably conclude that the

18  front label was making a specific representation."  *Whiteside v. Kimberly Clark Corp.*,

19  108 F.4th 771, 780 (9th Cir. 2024) (internal quotations and citations omitted).

20  "California courts . . . have recognized that whether a business practice is deceptive

21  will usually be a question of fact not appropriate for" a motion to dismiss.  *Williams v.*

22  *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

23          The Court is guided by the Ninth Circuit's recent decision in *Souter v. Edgewell*

24  *Personal Care Co.*, where the plaintiff purchased Wet Ones Hand Wipes advertised as

25  "hypoallergenic" on the label.[3]  No. 22-55898, 2023 WL 5011747, at *1 (9th Cir. Aug.

26  _____

27  [3] Defendant points out that *Souter* is unpublished and therefore not precedential.  (Mot. at 7.)  Because
    *Souter* was decided after 2006, the Court relies on it as persuasive authority.  Fed. R. App. P. 32.1; *see*
    *also* Ninth Circuit Rule 36-3.

28

1   7, 2023).  Relying on a dictionary definition, the plaintiff alleged in the complaint that

2   a reasonable consumer would believe "hypoallergenic" meant the Hand Wipes were

3   "designed to reduce or minimize the possibility of an allergic response, as by

4   containing relatively few or no potentially irritating substances."  *Id.* at *2.  The district

5   court proposed its own definition of "hypoallergenic" and dismissed the plaintiff's

6   claims, holding that she failed to allege "that a reasonable consumer would assume

7   that the Hand Wipes have 'no potential allergens.'"  *Id.* at *3.  The Ninth Circuit

8   reversed, holding, "At the motion to dismiss stage, it was improper for the district

9   court to select between competing plausible interpretations of an ambiguous term."

10  *Id.*

11       Defendant argues that *Souter* is inapposite because Plaintiff does not plead a

12  plausible definition of "hypoallergenic."[4]  (Mot. at 7.)  Plaintiff defines

13  "hypoallergenic" as "a Product [that] is specifically formulated to minimize the risk of

14  allergic reactions and is free from common allergens."  (Compl. ¶ 5).  This definition is

15  substantially similar to the definition the plaintiff offered in *Souter*.  *See* 2023 WL

16  5011747, at *2 (defining the term as meaning the product was "designed to reduce

17  or minimize the possibility of an allergic response, as by containing relatively few or

18  no potentially irritating substances").  Plaintiff also bases her interpretation on

19  dictionary definitions that define "hypoallergenic" as "having little likelihood of

20  causing an allergic reaction" or "designed to reduce or minimize the possibility of an

21  allergic response."  (Compl. ¶ 21.)  As such, the Court holds that Plaintiff's definition is

22  plausible.  Even if Defendant or the Court could construct a competing plausible

23  definition, it would be improper at this stage for the Court to "select between

24  competing plausible interpretations of an ambiguous term."  *See Souter*, 2023 WL

25

26  [4] Defendant also argues that *Souter* is inapposite because Plaintiff has failed to identify an ingredient more specific than "fragrance."  (Mot. at 7.)  But Plaintiff is unable to provide any more detailed information because the Product's back label simply lists the ingredient as "fragrance."  (*See* Compl. at

27  8.)  Defendant is, in effect, demanding information that it does not provide to the public, and then arguing that failure to furnish such information is cause for dismissal.  Defendant also does not explain

28  why a more particular allegation is necessary for *Souter* to be on point.

1    5011747 at *3.  Accordingly, Plaintiff plausibly states that reasonable consumers

2    would interpret the Product's representation of "hypoallergenic" as meaning the

3    Product is "specifically formulated to minimize the risk of allergic reactions and is free

4    from common allergens."  (Compl. ¶ 5.)  Because the Product allegedly contains a

5    common allergen, Plaintiff plausibly shows that "members of the public are likely to

6    be deceived" by the Product's claim of being "hypoallergenic."  *See McGinity*, 69

7    F.4th at 1097 (internal quotations and citation omitted); Compl. ¶ 4.  Moreover,

8    because reasonable consumers would not require more information before

9    reasonably concluding that the front label was making a specific representation, the

10    Court cannot consider the back label.  *See Whiteside*, 108 F.4th at 780.

11        Defendant's final argument here is that Plaintiff cannot plausibly state that she

12    relied on her definition of "hypoallergenic" because she initiated the related case

13    against Walmart for a product marked "hypoallergenic" that she purchased before

14    the Product, and therefore, Defendant argues, Plaintiff should have known

15    "hypoallergenic" did not mean a product was free from all common allergens.  (Mot.

16    at 9 (citing *Lacey Timmins v. Walmart, Inc.*, 2:24-cv-02960-DJC-JDP (E.D. Cal.)).)  But

17    Defendant fails to explain why Plaintiff's personal knowledge of the term means that

18    her claims fail under the reasonable consumer standard.  Indeed, the standard is not

19    focused on an individual plaintiff but rather "is evaluated from the perspective of the

20    ordinary consumer within the larger population, who is not typically exceptionally

21    acute or sophisticated or wary and suspicious of advertising claims."  *See Souter*,

22    2023 WL 5011747, at *1 (cleaned up).  As such, whether Plaintiff knew what

23    "hypoallergenic" meant is irrelevant to the analysis of these claims.

24        Because the Court holds that Plaintiff's claims satisfy the reasonable consumer

25    standard, the Court denies Defendant's motion as to Plaintiff's UCL, FAL, and CLRA

26    claims.

27    ////

28    ////

### III.    Express Warranty

Defendant argues that "hypoallergenic" is not a plausible express warranty because there is no standard definition of the term.  (Mot. at 10.)  But, as Plaintiff points out, courts have held that, under California law, a "label or representation that a product is 'hypoallergenic' can constitute an express warranty for purposes of a breach-of-warranty claim."  (Opp'n at 10 (citing *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1052 (N.D. Cal. 2018)).)  In response, Defendant cites a case where the district court dismissed the plaintiffs' claim for breach of express warranty because it depended on an "implausible definition" of "hypoallergenic."  (Reply at 3 (quoting *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *4 (N.D. Cal. June 18, 2018)).)  In *Rugg*, the plaintiffs defined "hypoallergenic" as meaning a product that did not contain any "skin sensitizers," which they defined as "a substance that causes sensitization by skin contact in a substantial number of persons based on human evidence or appropriate animal testing."  2018 WL 3023493, at *2.  The *Rugg* plaintiffs furthered that the term meant the product contained "no ingredients known to produce a negative reaction—skin irritation, skin corrosion, eye damage, birth defects, cancer, genetic mutations, etc."  *Id.*  That definition is categorically different and more expansive than Plaintiff's, and because the Court already found Plaintiff's definition plausible, it necessarily concludes that Plaintiff has plausibly pled an express warranty claim.  Accordingly, the Court denies Defendant's motion as to Plaintiff's express warranty claim.

### IV.    Implied Warranty

Defendant urges the Court to dismiss Plaintiff's implied warranty claim because she lacks contractual privity with Defendant.  (Mot. at 10-11.)  Plaintiff argues that her claim falls under the food and drugs exception to the privity requirement.  (Opp'n at 11.)  The Ninth Circuit recognized that, under California law, there is an exception to the privity requirement for cases "involving foodstuffs, pesticides, and pharmaceuticals."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir.

8

2008).  For example, in *Choi v. Kimberly-Clark Worldwide, Inc.*, the district court held that tampons fell under the food and drugs exception "because the products are intended for human consumption quite as much as food."  No. SA CV 19-0468-DOC (ADSx), 2019 WL 4894120, at *11 (C.D. Cal. Aug. 28, 2019).  The food and drugs exception exists because "the initial sale to distributor or retailer of pharmaceuticals is sufficient to impose upon the manufacturer the responsibility of fulfilling the implied warranties which run to the benefit of the persons whom the manufacturer intended to be, and who in fact became, the 'consumers.'"  *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 609 (Ct. App. 1960).  Accordingly, this exception does not apply to cases where the consumers typically rely on intermediary authorities, such as in the cases of heart valves, pain pumps, and intraocular devices.  *See Blanco v. Baxter Healthcare Corp.*, 70 Cal. Rptr. 3d 566, 582 (2008) (plaintiff relied on her physician's skill and judgment to select a heart valve); *Quatela v. Stryker Corp.*, 820 F. Supp. 2d 1045, 1048 (N.D. Cal. 2010) (plaintiff relied on the judgment of medical professionals to select pain pumps); *Evraets v. Intermedics Intraocular, Inc.*, 29 Cal. App. 4th 779, 788 (1994), *abrogated on other grounds by Mize v. Mentor Worldwide LLC*, 51 Cal. App. 5th 850, 860 (2020) (plaintiff relied on physician's skill or judgment to select an intraocular lens).  In those cases, the manufacturer of those medical devices intended the intermediary professionals to be the "consumers" of the products, rather than the individual patients who benefited from the products, which made those cases inappropriate for the food and drugs exception.

Here, the Court concludes that the Product falls under the food and drugs exception.  As Plaintiff states, jelly products "are literally rubbed into and absorbed by the body."  (Mot. at 11.)  The Product is therefore "intended for human consumption quite as much as food."  *See Choi*, 2019 WL 4894120, at *11.  Moreover, Defendant intends the "consumers" to be the individuals like Plaintiff who purchase the Product at distributor's stores.  There is no intermediary authority like a doctor who Plaintiff or similarly situated individuals typically rely on in selecting the Product.  Because the

1    food and drugs exception applies, Plaintiff does not need to allege privity and

2    otherwise plausibly states an implied warranty claim.  Accordingly, the Court denies

3    Defendant's motion as to Plaintiff's implied warranty claim.

4    **V.      Equitable Remedies**

5            Defendant opposes two forms of relief that Plaintiff seeks in her Prayer for

6    Relief.  (*See* Compl. at 23.)  First, Defendant contends that Plaintiff cannot seek

7    restitution.  (Mot. at 11–12.)  Defendant cites several cases, none of which support

8    dismissing a claim for restitution upon a motion to dismiss.  *See id.* (citing *Kenney v.*

9    *Fruit of the Earth, Inc.*, No. 23-55583, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024)

10   (affirming the district court's order granting summary judgment on plaintiff's

11   equitable claims in favor of defendants because monetary damages were an

12   adequate legal remedy); *Leslie v. Gen. Motors LLC*, No. 1:24-CV-00915-JLT-SAB,

13   2024 WL 4190072, at *7 (E.D. Cal. Sept. 13, 2024) (holding that plaintiff did not have

14   standing to seek injunctive relief); *Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 839

15   (E.D. Cal. 2024) (same); *Guzman v. Graham Packaging Co., L.P.*, No. 2:24-CV-00498-

16   TLN-AC, 2024 WL 4289581, at *6 (E.D. Cal. Sept. 25, 2024) (dismissing UCL claim

17   where plaintiff did not allege she lacked an adequate remedy at law)).  To seek

18   equitable remedies at the pleading stage, a plaintiff need only allege that they might

19   lack an adequate remedy at law.  *See Valiente v. Simpson Imports, Ltd.*, 717 F. Supp.

20   3d 888, 906–07 (N.D. Cal. 2024) (collecting cases).  Plaintiff satisfies this requirement

21   by alleging that available legal remedies "are inadequate because they are not

22   equally prompt, certain, or efficient as equitable relief."  (Compl. ¶ 83.)

23           Second, Defendant argues that Plaintiff does not have standing to seek

24   injunctive relief.  (Mot. at 12–13.)  The Ninth Circuit held that a plaintiff has standing to

25   seek an injunction against a product's misleading representation where "the plaintiff

26   faces an actual and imminent threat of future injury."  *Davidson v. Kimberly-Clark*

27   *Corp.*, 889 F.3d 956, 968 (9th Cir. 2018).  The court explained, "In some cases, the

28   threat of future harm may be the consumer's plausible allegations that she will be

1   unable to rely on the product's advertising or labeling in the future, and so will not

2   purchase the product although she would like to. . . . In other cases, the threat of

3   future harm may be the consumer's plausible allegations that she might purchase the

4   product in the future, despite the fact it was once marred by false advertising or

5   labeling, as she may reasonably, but incorrectly, assume the product was improved."

6   *Id.* at 969–70.

7        Here, Plaintiff alleges that it is "possible" that she "would purchase the Product

8   in the future if the representations were truthful" because she "continues to buy

9   similar products in the marketplace." (Compl. ¶ 46.)  Plaintiff also alleges that she

10  "remains interested in purchasing similar healing jelly products that are truly

11  hypoallergenic.  However, she cannot know for certain whether the false labeling of

12  the Product has been or will be corrected." (*Id.* ¶ 10.)  These allegations not only

13  satisfy the requirement outlined in *Davidson* but, in fact, are the precise examples the

14  court provided that would establish standing for injunctive relief.  *See Davidson*, 889

15  F.3d at 969–70.

16       Accordingly, the Court denies Defendant's motion as to Plaintiff's request for

17  equitable remedies.

18  **VI.     Nationwide Class**

19       Finally, Defendant asks the Court to limit the putative class to claims under

20  California law on behalf of other California consumers (i.e. exclude consumers

21  outside California).  (Mot. at 13–15.)  To determine the scope of the class in this

22  action, the Court would need to conduct a case-specific choice-of-law analysis that it

23  cannot undertake at this time because it does not know the "facts and circumstances"

24  of the proposed class.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th

25  Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v.*

26  *Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (whether out-of-state class

27  members must pursue claims under their own states' consumer protection statutes

28  instead of California's depends on a multi-stage choice-of-law analysis specific to the

"facts and circumstances" of the particular case).  This determination is proper upon a motion for class certification, not a motion to dismiss, and thus it would be premature for the Court to dismiss class claims at this stage.  *Accord Watson*, 736 F. Supp. 3d at 849.  Accordingly, the Court denies Defendant's motion as to Plaintiff's nationwide class claims.

### CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion to Dismiss (ECF No. 8).  Defendant Unilever United States, Inc. is ordered to answer the complaint within fourteen (14) days of this Order.

IT IS SO ORDERED.

Dated:   **June 4, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE